In re _____ ) Case No._____

) 

) NOTICE OF INTENT TO Sell Real or

) Personal Property, Compensate Real Estate

) Broker, and/or Pay any Secured Creditor's Fees

) and Costs; Motion for Authority to Sell Property

) Free and Clear of Liens; and Notice of Hearing

) [**Note**: Do not use to sell personally identifiable

Debtor(s) ) information about individuals!]

NOTICE IS GIVEN THAT _____, the

_____ (i.e., debtor, trustee, etc.), intends to sell the property described below and moves for authority to sell said property free and clear of liens pursuant to 11 USC §363(f). The movant's name, address, and telephone # are: _____

_____.

If you wish to object to any aspect of the sale or fees disclosed in ¶7 or ¶15 you must: (1) attend the hearing set in ¶16 below and, (2) within 23 days of the later of either (a) the date next to the signature below; or (b) the service date in ¶17 below, file with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", at 1001 SW 5th Ave. #700, Portland OR 97204; or if it begins with "6" or "7", at 405 E 8th Ave #2600, Eugene OR 97401): (a) a written response stating the specific facts upon which the objection is based, and (b) proof that a copy of the response was served on the movant.

This document shall constitute the notice required by LBR 2002-1. (COMPLETE ALL SECTIONS.)

1. The specific subsections of 11 USC §363(f) movant relies upon for authority to sell the property free and clear of liens are:

2. Buyer's Name & Relation to Debtor:

3. General description of the property (NOTE: If real property, state street address here. Also attach legal description as an Exhibit to the original filed with the court):

4. A copy of the full property description or inventory may be examined or obtained at:

5. The property may be previewed at (include time and place):

6. Other parties to the transaction and their relationship to the debtor are:

7. Gross sales price: $_____. All liens on the property total: $_____, of which Movant believes a total of $_____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable). Secured creditor(s) also seek(s) reimbursement of $_____ for fees and costs. Total sales costs will be: $_____. All tax consequences have been considered and it presently appears the sale will result in net proceeds to the estate after payment of valid liens, fees, costs and taxes of approximately: $_____.

8. The sale ____ is ____ is not (**mark one**) of substantially all of the debtor's assets. Terms and conditions of sale:

_____

9. Competing bids must be submitted to the movant no later than (date) _____, and must exceed the above offer by at least _____ (and be on the same or more favorable terms to the estate).

Case 13-33940-elp11    Doc 40    Filed 08/13/13

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If ¶7 indicates little or no equity for the estate, the reason for the sale is:

and expenses and taxes resulting from the sale will be paid as follows:

12. (Ch. 11 cases only) The reason for proposing the sale in advance of approval of a plan of reorganization is:

13. The following information relates to lien holders (who are listed in PRIORITY order):

| Name | Service Address (See FRBP 7004) | Approximate Lien Amount | Indicate Treatment at Closing (i.e., Fully Pd., Partially Pd., or Not Pd.) |
| --- | --- | --- | --- |

14.   Any liens not fully paid at closing shall attach to the sale proceeds in the same order of priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs or other charges as provided in this motion, shall be held in trust until the court orders payment.

15.   [If real property]  The court appointed real estate broker, _____, will be paid _____.

16.   **A HEARING ON THIS MOTION AND ANY OBJECTIONS TO THE SALE AND/OR FEES WILL BE HELD**
ON _____ AT _____ IN _____
_____ and testimony will be received if offered and admissible.

17.   [Unless movant is a Ch. 7 trustee]  I certify that on _____ a copy of this document was served, pursuant to FRBP 7004, on the debtor(s), trustee, if any, U.S. Trustee, each named lien holder at the address listed above, Creditors' Committee Chairperson, if any, and their respective attorneys; and that a copy was also served that date, pursuant to FRBP 2002(a), on all creditors and parties requesting special notice as listed in the Court's records that were obtained on _____, a copy of which is attached to the original document filed with the Bankruptcy Court.

18.   FOR FURTHER INFORMATION CONTACT: _____
_____.

DATE: _____          _____

Signature & Relation to Movant
_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

Label Matrix for local noticing
0979-3
Case 13-33940-elp11
District of Oregon
Portland
Tue Aug 13 09:28:53 PDT 2013

AMG Factory, LLC
7144 NW Progress Ct.
Hillsboro, OR 97124-8568

Craig G. Russillo
Schwabe Williamson & Wyatt
1211 SW 5th Ave., Suite 1900
Portland, OR 97204-3719

Devin Wright
2400 NW Simpson Lane
Portland, OR 97229

Gary Hilde
3909 NW Devoto Ln.
Portland, OR 97229-8096

NICHOLAS J HENDERSON
117 SW Taylor St #200
Portland, OR 97204-3029

Joe Wright
2031 NW Village Cir.
Portland, OR 97229-7502

Karna R. Gustafson
Landye Bennett Blumstein LLP
1300 SW 5th Ave., Suite 3500
Portland, OR 97201-5641

Key Government Finance, Inc.
Attn: Adam Warner, President
1000 S. McCaslin Blvd.
Superior, CO 80027-9437

CRAIG G RUSSILLO
1211 SW 5th Ave #1600-1900
Portland, OR 97204-3795

PEENESH SHAH
Schwabe Williamson & Wyatt
1211 SW 5th Avenue, Ste. 1900
Portland, OR 97204-3719

US Trustee, Portland
620 SW Main St #213
Portland, OR 97205-3026

Washington County Assessment & Taxation
155 N. First Avenue
Suite 130
Hillsboro, OR 97124-3001

Westmark Center Owners Assoc.
c/o Ed Freeman, President
PO Box 1754
Lake Oswego, OR 97035-0579

Westmark Center Owners Assoc.
c/o Marshall Fant, Reg. Agent
17700 SW Upper Boones Ferry Rd.,Ste. 120
Portland, OR 97224-7082

Westmark Center Owners Assoc.
c/o NW Community Management
PO Box 23099
Portland, OR 97281-3099

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Key Government Finance, Inc.

End of Label Matrix
Mailable recipients     15
Bypassed recipients      1
Total                   16

Legal Description for Property at 7144 NW Progress Court, Hillsboro, OR 97124

Lot 5, WESTMARK NO. 2, in the City of Hillsboro, County of Washington, State of Oregon.

---

### AGENCY ACKNOWLEDGMENT

Buyer shall execute this Acknowledgment concurrent with the execution of the Agreement below and prior to delivery of that Agreement to Seller. Seller shall execute this Acknowledgment upon receipt of the Agreement by Seller, even if Seller intends to reject the Agreement or make a counter-offer. In no event shall Seller's execution of this Acknowledgment constitute acceptance of the Agreement or any terms contained therein.

Pursuant to the requirements of Oregon Administrative Rules (OAR 863-015-0215), both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Disclosure Pamphlet, and by execution below acknowledge and consent to the agency relationships in the following real estate purchase and sale transaction as follows:

(a)     Seller Agent:  Robert Niehaus  of Niehaus Properties, Inc. (the "Selling Firm") is the agent of: ☐ Buyer exclusively; ☒ Seller exclusively; ☐ both Seller and Buyer ("Disclosed Limited Agency").

(b)     Buyer Agent:  Kevin Joshi  of Kidder Mathews  firm (the "Buying Firm") is the agent of: ☒ Buyer exclusively; ☐ Seller exclusively; ☐ both Seller and Buyer ("Disclosed Limited Agency").

If the name of the same real estate firm appears in both Paragraphs (a) and (b) above, Buyer and Seller acknowledge that a principal broker of that real estate firm shall become the Disclosed Limited Agent for both Buyer and Seller, as more fully set forth in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller and the named real estate agent(s).

ACKNOWLEDGED

| | | | |
|---|---|---|---|
| Buyer: (print) | NEIL J GILLIS (sign) | | Date: 7/15/2013 |
| Buyer: (print) | _____ (sign) _____ | | Date: _____ |
| Seller: (print) | _____ (sign) _____ | | Date: _____ |
| Seller: (print) | _____ (sign) _____ | | Date: _____ |

---

*[No further text appears on this page.]*

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 1 of 19

PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY

1        This PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (this
2    "Agreement") is accepted, made and entered into on the later of the two dates shown beneath the parties'
3    signatures on the signature page attached hereto (the "Execution Date"):

4

5    BETWEEN:    **AMG Factory LLC ("Seller")**
6                 Address:      7144 NW Progress Court, Hillsboro, OR 97124
7                 Phone:
8                 E-Mail:

9

10   AND:        **Ligman USA Properties LLC ("Buyer")**
11             Address: *30 17112 SW BERKELEY LN BEAVERTON OR 97006*
12             Phone: *503-645-0500 - cEc 503-464-6615*
13             E-Mail: *NEIL @ LIGMANLIGHTINGUSA . COM* .

14

15    1. Purchase and Sale.

16

17        1.1   Generally.  In accordance with this Agreement, Buyer agrees to buy and acquire from Seller, and
18   Seller agrees to sell to Buyer the following, all of which are collectively referred to in this Agreement as the "Property:"
19   (a) the real property and all improvements thereon generally described or located at 7144 NW Progress Court in the
20   City of Hillsboro, County of Washington, Oregon legally described on Exhibit A, attached hereto (the "Real Estate") **(if
21   no legal description is attached, the legal description shall be based on the legal description provided in the
22   Preliminary Report (described in Section 5), subject to the review and approval of both parties hereto)**,
23   including all of Seller's right, title and interest in and to all fixtures, appurtenances, and easements thereon or related
24   thereto; (b) all of Seller's right, title and interest, if any, in and to any and all lease(s) to which the Real Estate is
25   subject (each, a "Lease"); and (c) any and all personal property located on and used in connection with the operation
26   of the Real Estate and owned by Seller (the "Personal Property"). If there are any Leases, see Section 21.1, below.
27   The occupancies of the Property pursuant to any Leases are referred to as the "Tenancies" and the occupants
28   thereunder are referred to as "Tenants."  If there is any Personal Property, see Section 21.2, below.

29

30        1.2   Purchase Price.  The purchase price for the Property shall be Two Million One Hundred Thousand
31   and no/xx dollars ($2,100,000.00) (the "Purchase Price"). The Purchase Price shall be adjusted, as applicable, by the
32   net amount of credits and debits to Seller's account at Closing (defined below) made by Escrow Holder pursuant to
33   the terms of this Agreement.  The Purchase Price shall be payable as follows:

34

35        1.2.1   Earnest Money Deposit.
36           (a)  Within two (2) days of the Execution Date, Buyer shall deliver into Escrow (as defined
37   herein), for the account of Buyer, $50,000.000 as earnest money (the "Earnest Money") in the form of:
38   a Promissory note (the "Note").

39

40   If the Earnest Money is being held by the ☐ Selling Firm ☐ Buying Firm, then the firm holding such Earnest Money
41   shall deposit the Earnest Money in the ☐ Escrow (as hereinafter defined) ☐ Selling Firm's Client Trust Account ☐
42   Buying Firm's Clients' Trust Account, no later than 5:00 PM Pacific Time three (3) business days after such firm's
43   receipt, but in no event later than the date set forth in the first sentence of this Section 1.2.1(a).

44

45           (b)  If the Earnest Money is in the form of a Note, it shall be due and payable ☐ no later
46   than 5:00 PM Pacific Time three (3) days after the Execution Date; ☒ after satisfaction or waiver by Buyer of the

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 2 of 19

47  conditions to Buyer's obligation to purchase the Property set forth in this Agreement; or ☐ Other: _____. If the terms
48  of the Note and this Agreement conflict, the terms of this Agreement shall govern. If the Note is not redeemed and
49  paid in full when due, then: (i) the Note shall be delivered and endorsed to Seller (if not already in Seller's
50  possession); (ii) Seller may collect the Earnest Money from Buyer, either pursuant to an action on the Note or an
51  action on this Agreement; and (iii) Seller shall have no further obligations under this Agreement.
52
53              (c)   The purchase and sale of the Property shall be accomplished through an escrow (the
54  "Escrow") that Seller has established or will establish with Ticor Title, 111 SW Columbia Street, Suite 1000, Portland,
55  OR 97201, Attention: Alli Swallow (the "Escrow Holder") within 2 days after the Execution Date. Except as otherwise
56  provided in this Agreement: (i) any interest earned on the Earnest Money shall be considered to be part of the
57  Earnest Money; (ii) the Earnest Money shall be non-refundable upon satisfaction or waiver of all Conditions as
58  defined in Section 2.1; and (iii) the Earnest Money shall be applied to the Purchase Price at Closing.
59
60              1.2.2   Balance of Purchase Price. Buyer shall pay the balance of the Purchase Price at Closing
61  by ☒ cash or other immediately available funds; or ☐ Other: _____.
62
63          1.3   Section 1031/1033 Like-Kind Exchange. Each party acknowledges that either party (as applicable,
64  the "Exchanging Party") may elect to engage in and affect a like-kind exchange under Section 1031 of the Internal
65  Revenue Code of 1986, as amended, involving the Property (or any legal lot thereof) (a "1031/1033 Exchange"). The
66  non-exchanging party with respect to a 1031 Exchange is referred to herein as the "Cooperating Party." Buyer and
67  Seller each hereby agrees to reasonably cooperate with the other in completing each such 1031/1033 Exchange;
68  provided, however, that such cooperation shall be at the Exchanging Party's sole expense and shall not delay the
69  Closing for the Property. Accordingly, the Exchanging Party may assign the Exchanging Party's rights with respect to
70  the Property (or any legal lot thereof) to a person or entity for the purpose of consummating a 1031/1033 Exchange
71  ("Intermediary"), provided that such assignment does not delay the Closing for the Property (or applicable legal lot
72  thereof), or otherwise reduce or diminish the Exchanging Party's liabilities or obligations hereunder. Such assignment
73  by the Exchanging Party shall not release the Exchanging Party from the obligations of the Exchanging Party under
74  this Agreement. The Cooperating Party shall not suffer any costs, expenses or liabilities for cooperating with the
75  Exchanging Party and shall not be required to take title to the exchange property. The Exchanging Party agrees to
76  indemnify, defend and hold the Cooperating Party harmless from any liability, damages and costs arising out of the
77  1031/1033 Exchange.
78
79          2. Conditions to Purchase.
80              2.1   Buyer's obligation to purchase the Property is conditioned on the following:
81
82                  ☐ None;
83                  ☒ Within Sixty (60) days of the Execution Date, Buyer's approval of the results of (collectively, the
84                     "General Conditions"): (a) the Property inspection described in Section 3 below; (b) the
85                     Document Review described in Section 4.
86                  ☒ Within Sixty (60) days of the Execution Date, financing suitable to the Buyer is available.
87                  ☒ Within Sixty (60) days of the Execution Date, an Environmental Assessment of the site is
88                     completed with favorable results.
89
90  The General Conditions, Financing Conditions or any other Conditions noted shall be defined as "Conditions."
91
92          2.2   If, for any reason in Buyer's sole discretion, Buyer has not timely given written waiver of the
93  Conditions set forth in Section 2.1, or stated in writing that such Conditions have been satisfied, by notice given to
94  Seller within the time periods for such conditions set forth above, this Agreement shall be deemed automatically

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 3 of 19

95 terminated, the Earnest Money shall be promptly returned to Buyer, and thereafter, except as specifically provided to
96 the contrary herein, neither party shall have any further right or remedy hereunder.
97
98       3. <u>Property Inspection</u>.  Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter
99 the Property at reasonable times after reasonable prior notice to Seller and after prior notice by Seller to the Tenants
100 as required by the applicable Leases, if any, to conduct any and all inspections, tests, and surveys concerning the
101 structural condition of the improvements, all mechanical, electrical and plumbing systems, hazardous materials, pest
102 infestation, soils conditions, wetlands, Americans with Disabilities Act compliance, zoning, and all other matters
103 affecting the suitability of the Property for Buyer's intended use and/or otherwise reasonably related to the purchase
104 of the Property including the economic feasibility of such purchase.  If the transaction contemplated in this Agreement
105 fails to close for any reason (or no reason) as a result of the act or omission of Buyer or its agents, Buyer shall
106 promptly restore the Property to substantially the condition the Property was in prior to Buyer's performance of any
107 inspections or work.  Buyer shall indemnify, hold harmless, and defend Seller from all liens, costs, and expenses,
108 including reasonable attorneys' fees and experts' fees, arising from or relating to Buyer's entry on and inspection of
109 the Property.  This agreement to indemnify, hold harmless, and defend Seller shall survive Closing or any termination
110 of this Agreement.
111
112       4. <u>Seller's Documents</u>.  Within <u>Five (5)</u> days after the Execution Date, Seller shall deliver to Buyer or
113 Buyer's designee, legible and complete copies of the following documents, including without limitation, a list of the
114 Personal Property, and other items relating to the ownership, operation, and maintenance of the Property to the
115 extent now in existence and to the extent such items are or come within Seller's possession or control: <u>(i) Year-to-</u>
116 <u>Date and two prior year's Operating Statements for the property, (ii)Engineering drawings and specifications for</u>
117 <u>improvements, (iii) Any geotechnical reports, (iv) Any management agreements, (v) Third party service contracts, (vi)</u>
118 <u>Any environmental reports or surveys pertaining to the property, (vii)  Any property inspection reports, (viii) Any</u>
119 <u>notices of violation of any laws or ordinances from any governmental agencies pertaining to the property, (ix) Any</u>
120 <u>certificates of occupancy, (x) Any lease for tenants occupying space in the property</u>.
121
122       5. <u>Title Insurance</u>.  Within <u>Five (5)</u> days after the Execution Date, Seller shall cause to be delivered to Buyer
123 a preliminary title report from the title company (the "<u>Title Company</u>") selected by Seller (the "<u>Preliminary Report</u>"),
124 showing the status of Seller's title to the Property, together with complete and legible copies of all documents shown
125 therein as exceptions to title ("<u>Exceptions</u>"). Buyer shall have <u>Five (5)</u> days after receipt of a copy of the Preliminary
126 Report and Exceptions within which to give notice in writing to Seller of any objection to such title or to any liens or
127 encumbrances affecting the Property.  Within <u>Five (5)</u> days after receipt of such notice from Buyer, Seller shall give
128 Buyer written notice of whether it is willing and able to remove the objected-to Exceptions.  Without the need for
129 objection by Buyer, Seller shall, with respect to liens and encumbrances that can be satisfied and released by the
130 payment of money, eliminate such exceptions to title on or before Closing.  Within <u>Five (5)</u> days after receipt of such
131 notice from Seller (the "<u>Title Contingency Date</u>"), Buyer shall elect whether to:  (i) purchase the Property subject to
132 those objected-to Exceptions which Seller is not willing or able to remove; or (ii) terminate this Agreement.  If Buyer
133 fails to give Seller notice of Buyer's election, then such inaction shall be deemed to be Buyer's election to terminate
134 this  Agreement.   On or before the Closing  Date (defined below), Seller shall remove all Exceptions to which
135 Buyer objects and which Seller agrees, or is deemed to have agreed, Seller is willing and able to remove.  All
136 remaining Exceptions set forth in the Preliminary Report and those Exceptions caused by or agreed to by Buyer shall
137 be deemed "<u>Permitted Exceptions</u>."
138
139       6. <u>Default; Remedies</u>.  Notwithstanding anything to the contrary contained in this Agreement, in the event
140 Buyer fails to deposit the Earnest Money in Escrow strictly as and when contemplated under Section 1.2.1 above,
141 Seller shall have the right at any time thereafter, but prior to Buyer's deposit of the Earnest Money to Escrow, to
142 terminate this Agreement and all further rights and obligations hereunder by giving written notice thereof to Buyer.  If

143 the conditions, if any, to Buyer's obligation to consummate this transaction are satisfied or waived by Buyer and Buyer
144 fails, through no fault of Seller, to close on the purchase of the Property, Seller's sole remedy shall be to retain the
145 Earnest Money paid by Buyer. In the event Seller fails, through no fault of Buyer, to close the sale of the Property,
146 Buyer shall be entitled to pursue any remedies available at law or in equity, including without limitation, the return of
147 the Earnest Money paid by Buyer or the remedy of specific performance. In no event shall either party be entitled to
148 punitive or consequential damages, if any, resulting from the other party's failure to close the sale of the Property.
149
150     7. Closing of Sale.
151
152         7.1   Buyer and Seller agree the sale of the Property shall be consummated, in Escrow on or before **Ten**
153 **(10)** days after the conditions set forth in Sections 2.1, 3, 4 and 5 have been satisfied or waived in writing by Buyer
154 (the "Closing" or the "Closing Date"). The sale of the Property shall be deemed closed when the document(s)
155 conveying title to the Property is/are delivered and recorded and the Purchase Price is disbursed to Seller.
156
157         7.2   At Closing, Buyer and Seller shall deposit with the Escrow Holder all documents and funds required
158 to close the transaction in accordance with the terms of this Agreement. At Closing, Seller shall deliver a certification
159 in a form provided by the Escrow Holder confirming whether Seller is or is not a "foreign person" as such term is
160 defined by applicable law and regulations.
161
162         7.3   At Closing, Seller shall convey fee simple title to the Property to Buyer by ☒ statutory warranty
163 deed or ☐ _____ (the "Deed"). At Closing, Seller shall cause the Title Company to deliver to Buyer a standard
164 ALTA form owner's policy of title insurance (the "Title Policy") in the amount of the Purchase Price insuring fee simple
165 title to the Property in Buyer subject only to the Permitted Exceptions and the standard preprinted exceptions
166 contained in the Title Policy. Seller shall reasonably cooperate in the issuance to Buyer of an ALTA extended form
167 policy of title insurance. Buyer shall pay any additional expense resulting from the ALTA extended coverage and any
168 endorsements required by Buyer.
169
170         8. Closing Costs; Prorations. Seller shall pay the premium for the Title Policy, provided, however, if Buyer
171 elects to obtain an ALTA extended form policy of title insurance and/or any endorsements, Buyer shall pay the
172 difference in the premium relating to such election. Seller and Buyer shall each pay one-half (1/2) of the escrow fees
173 charged by the Escrow Holder. Any excise tax and/or transfer tax shall be paid in accordance with the local custom
174 determined by the Title Company and applicable law. Real property taxes for the tax year of the Closing,
175 assessments (if a Permitted Exception), personal property taxes, rents and other charges arising from existing
176 Tenancies paid for the month of Closing, interest on assumed obligations, and utilities shall be prorated as of the
177 Closing Date. If applicable, prepaid rents, security deposits, and other unearned refundable deposits relating to
178 Tenancies shall be assigned and delivered to Buyer at Closing. ☐ Seller ☐ Buyer ☒ N/A shall be responsible for
179 payment of all taxes, interest, and penalties, if any, upon removal of the Property from any special assessment or
180 program.
181
182         9. Possession. Seller shall deliver exclusive possession of the Property, subject to the Tenancies (if any)
183 existing as of the Closing Date, to Buyer ☒ on the Closing Date or ☐ _____.
184
185         10. Condition of Property. Seller represents that Seller has received no written notices of violation of any
186 laws, codes, rules, or regulations applicable to the Property ("Laws"). Seller represents that, to the best of Seller's
187 knowledge without specific inquiry, Seller is not aware of any such violations or any concealed material defects in the
188 Property. Unless caused by Buyer, Seller shall bear all risk of loss and damage to the Property until Closing, and
189 Buyer shall bear such risk at and after Closing. Except for Seller's representations set forth in this Section 10 and the
190 attached Exhibit E, Buyer shall acquire the Property "AS IS" with all faults and Buyer shall rely on the results of its own

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 5 of 19

Exhibit B - Page 5 of 23

Case 13-33940-elp11     Doc 40     Filed 08/13/13

191  inspection and investigation in Buyer's acquisition of the Property. It shall be a condition of Buyer's Closing obligation
192  that all of Seller's representations and warranties stated in this Agreement are materially true and correct on the
193  Closing Date. Seller's representations and warranties stated in this Agreement shall survive Closing for one (1) year.
194
195         11. Operation of Property.  Between the Execution Date and the Closing Date, Seller shall continue to
196  operate, maintain and insure the Property consistent with Seller's current operating practices.  After Buyer has
197  satisfied or waived the conditions to Buyer's obligation to purchase the Property, and  the Earnest Money is non-
198  refundable, Seller may not, without Buyer's prior written consent, which consent shall not be unreasonably withheld,
199  conditioned, or delayed, enter into: (a) any new leases or occupancy agreements for the Property; (b) any material
200  amendments or modification agreements for any existing leases or occupancy agreements for the Property; or (c)
201  any service contracts or other agreements affecting the Property that are not terminable at the Closing.
202
203         12. Assignment.  Assignment of this Agreement: ☐ is PROHIBITED; ☐ is PERMITTED, without consent
204  of Seller; ☐ is PERMITTED ONLY UPON Seller's written consent; ☒ is PERMITTED ONLY IF the assignee is an
205  entity owned and controlled by Buyer.  If Seller's written consent is required for assignment, such consent may be
206  withheld in Seller's reasonable discretion. In the event of a permitted assignment, Buyer shall remain liable for all
207  Buyer's obligations under this Agreement.
208
209         13. Arbitration. **IF AND ONLY IF THIS SECTION IS INITIALED BY EACH OF BUYER AND SELLER, THE**
210  **FOLLOWING SHALL APPLY TO THIS AGREEMENT:**
211
212  ANY DISPUTE BETWEEN BUYER AND SELLER RELATED TO THIS AGREEMENT, THE PROPERTY, OR THE
213  TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT WILL BE RESOLVED BY ARBITRATION GOVERNED
214  BY THE OREGON UNIFORM ARBITRATION ACT (ORS 36.600 et seq.) AND, TO THE EXTENT NOT
215  INCONSISTENT WITH THAT STATUTE, CONDUCTED IN ACCORDANCE WITH THE RULES OF PRACTICE AND
216  PROCEDURE FOR THE ARBITRATION OF COMMERCIAL DISPUTES OF ARBITRATION SERVICES OF
217  PORTLAND (**"ASP"**).   THE ARBITRATION SHALL BE CONDUCTED IN PORTLAND, OREGON AND
218  ADMINISTERED BY ASP, WHICH WILL APPOINT A SINGLE ARBITRATOR HAVING AT LEAST FIVE (5) YEARS
219  EXPERIENCE IN THE COMMERCIAL REAL ESTATE FIELD IN THE _____ GEOGRAPHIC AREA (**IF BLANK IS**
220  **NOT COMPLETED, PORTLAND METROPOLITAN AREA).**   ALL ARBITRATION HEARINGS WILL BE
221  COMMENCED WITHIN THIRTY (30) DAYS OF THE DEMAND FOR ARBITRATION UNLESS THE ARBITRATOR,
222  FOR SHOWING OF GOOD CAUSE, EXTENDS THE COMMENCEMENT OF SUCH HEARING. THE DECISION OF
223  THE ARBITRATOR WILL BE BINDING ON BUYER AND SELLER, AND JUDGMENT UPON ANY ARBITRATION
224  AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES ACKNOWLEDGE THAT, BY
225  AGREEING TO ARBITRATE DISPUTES, EACH OF THEM IS WAIVING CERTAIN RIGHTS, INCLUDING ITS
226  RIGHTS TO SEEK REMEDIES IN COURT (INCLUDING A RIGHT TO A TRIAL BY JURY), TO DISCOVERY
227  PROCESSES THAT WOULD BE ATTENDANT TO A COURT PROCEEDING, AND TO PARTICIPATE IN A CLASS
228  ACTION.
229     _NG._
230  Initials of Buyer                                                     Initials of Seller
231
232         14. Attorneys' Fees.  In the event a suit, action, arbitration, or other proceeding of any nature whatsoever,
233  including without limitation any proceeding under the U.S. Bankruptcy Code, is instituted, or the services of an
234  attorney are retained, to interpret or enforce any provision of this Agreement or with respect to any dispute relating to
235  this Agreement, the prevailing or non-defaulting party shall be entitled to recover from the losing or defaulting party its
236  attorneys', paralegals', accountants', and other experts' fees and all other fees, costs, and expenses actually incurred
237  in connection therewith (the "Fees").  In the event of suit, action, arbitration, or other proceeding, the amount of Fees

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 6 of 19

238  shall be determined by the judge or arbitrator, shall include all costs and expenses incurred on any appeal or review,
239  and shall be in addition to all other amounts provided by law.
240
241      15. Statutory Notice.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON
242  TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300,
243  195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND
244  SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009. THIS INSTRUMENT DOES NOT ALLOW USE
245  OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND
246  REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE
247  TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT
248  TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR
249  PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR
250  PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS
251  DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF
252  ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424,
253  OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009.
254
255      16. Cautionary Notice About Liens.  UNDER CERTAIN CIRCUMSTANCES, A PERSON WHO PERFORMS
256  CONSTRUCTION-RELATED ACTIVITIES MAY CLAIM A LIEN UPON REAL PROPERTY AFTER A SALE TO THE
257  PURCHASER FOR A TRANSACTION OR ACTIVITY THAT OCCURRED BEFORE THE SALE. A VALID CLAIM
258  MAY BE ASSERTED AGAINST THE PROPERTY THAT YOU ARE PURCHASING EVEN IF THE CIRCUMSTANCES
259  THAT GIVE RISE TO THAT CLAIM HAPPENED BEFORE YOUR PURCHASE OF THE PROPERTY. THIS
260  INCLUDES, BUT IS NOT LIMITED TO, CIRCUMSTANCES WHERE THE OWNER OF THE PROPERTY
261  CONTRACTED WITH A PERSON OR BUSINESS TO PROVIDE LABOR, MATERIAL, EQUIPMENT OR SERVICES
262  TO THE PROPERTY AND HAS NOT PAID THE PERSONS OR BUSINESS IN FULL.
263
264      17. Brokerage Agreement.  For purposes of Sections 14 and 17 of this Agreement, the Agency
265  Acknowledgement on page 1 this Agreement is incorporated into this Agreement as if fully set forth herein. Seller
266  agrees to pay a commission to Selling Firm in the amount of **Five Percent (5.0%)** of the Purchase Price.  Such
267  commission shall be divided equally between Selling Firm and Buying Firm such that Selling Firm receives fifty
268  percent (50%) and Buying Firm receives fifty percent (50%). Seller shall cause the Escrow Holder to deliver to
269  Selling Firm and Buying Firm the real estate commission on the Closing Date or upon Seller's breach of this
270  Agreement, whichever occurs first. If the Earnest Money is forfeited by Buyer and retained by Seller in accordance
271  with this Agreement, in addition to any other rights the Selling Firm and Buying Firm may have, the Selling Firm and
272  the Buying Firm, together, shall be entitled to the lesser of:  (i) fifty percent (50%) of the Earnest Money; or (ii) the
273  commission agreed to above, and Seller hereby assigns such amount to the Selling Firm and the Buying Firm.
274
275      18. Notices. Unless otherwise specified, any notice required or permitted in, or related to this Agreement
276  must be in writing and signed by the party to be bound.  Any notice will be deemed delivered:  (a) when personally
277  delivered; (b) when delivered by facsimile or electronic mail transmission (in either case, with confirmation of
278  delivery); (c) on the day following delivery of the notice by reputable overnight courier; or (d) on the day following
279  delivery of the notice by mailing by certified or registered U.S. mail, postage prepaid, return receipt requested; and in
280  any case shall be sent by the applicable party to the address of the other party shown at the beginning of this
281  Agreement, unless that day is a Saturday, Sunday, or federal or Oregon State legal holiday, in which event such
282  notice will be deemed delivered on the next following business day.
283
284      19. Miscellaneous.  Time is of the essence of this Agreement.  If the deadline under this Agreement for
285  delivery of a notice or performance of any obligation is a Saturday, Sunday, or federal or Oregon State legal holiday,

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 7 of 19

286 such deadline will be deemed extended to the next following business day. The facsimile and/or electronic mail
287 transmission of any signed document including this Agreement in accordance with Section 18 shall be the same as
288 delivery of an original. At the request of either party, the party delivering a document by facsimile and/or electronic
289 mail will confirm such transmission by signing and delivering to the other party a duplicate original document. This
290 Agreement may be executed in counterparts, each of which shall constitute an original and all of which together shall
291 constitute one and the same Agreement. This Agreement contains the entire agreement and understanding of the
292 parties with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous
293 agreements between them. Without limiting the provisions of Section 12 of this Agreement, this Agreement shall be
294 binding upon and shall inure to the benefit of Buyer and Seller and their respective successors and assigns. Solely
295 with respect to Sections 14 and 17, Selling Firm and Buying Firm are third party beneficiaries of this Agreement. The
296 person signing this Agreement on behalf of Buyer and the person signing this Agreement on behalf of Seller each
297 represents, covenants and warrants that such person has full right and authority to enter into this Agreement and to
298 bind the party for whom such person signs this Agreement to its terms and provisions. Neither this Agreement nor a
299 memorandum hereof shall be recorded unless the parties otherwise agree in writing.
300
301      20. Governing Law. This Agreement is made and executed under, and in all respects shall be governed
302 and construed by, the laws of the State of Oregon.
303
304      21. Lease(s) and Personal Property.
305
306        21.1   Leases.
307
308          21.1.1   If required by Buyer or Buyer's lender and provided for in such Tenant's Lease, Seller shall
309 use commercially reasonable efforts to deliver to Buyer, at least _____ days **(three (3) if not filled in)** before the
310 Closing Date, a Tenant estoppel certificate, reasonably acceptable to Buyer, pertaining to each Lease at the Property
311 in effect as of the Closing Date (each, a "Tenant Estoppel"). Such Tenant Estoppels shall be dated no more than
312 _____ days **(fifteen (15) if not filled in)** prior to the Closing Date and shall certify, among other things: (a) that the
313 Lease is unmodified and in full force and effect, or is in full force and effect as modified, and stating the modifications;
314 (b) the amount of the rent and the date to which rent has been paid; (c) the amount of any security deposit held by
315 Seller; and (d) that neither party is in default under the Lease or if a default by either party is claimed, stating the
316 nature of any such claimed default. If Seller has not obtained Tenant Estoppels from all Tenants of the Property,
317 then Seller shall execute and deliver to Buyer a Tenant Estoppel with respect to any such Lease setting forth the
318 information required by this Section 21.1 and confirming the accuracy thereof.
319
320          21.1.2   If applicable, the assignment of the Lease(s) by Seller, and assumption of the Lease(s) by
321 Buyer shall be accomplished by executing and delivering to each other through Escrow an Assignment of Lessor's
322 Interest under Lease substantially in the form of Exhibit B attached hereto (the "Assignment").
323
324        21.2 Personal Property. If applicable, Seller shall convey all Personal Property to Buyer by executing
325 and delivering to Buyer at Closing through Escrow (as defined below), a Bill of Sale substantially in the form of Exhibit
326 C attached hereto (the "Bill of Sale"). A list of such Personal Property shall be attached to the Bill of Sale.
327
328      22. Residential Lead-Based Paint Disclosure. IF THE PROPERTY CONSISTS OF RESIDENTIAL
329 HOUSING BUILT PRIOR TO 1978, BUYER AND SELLER MUST COMPLETE THE LEAD-BASED PAINT
330 DISCLOSURE ADDENDUM ATTACHED HERETO AS EXHIBIT D.
331
332      23. Addenda; Exhibits. The following named addenda and exhibits are attached to this Agreement and
333 incorporated within this Agreement:

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 8 of 19

334 ☒ Exhibit A – Legal Description of Property **[REQUIRED]**
335 ☐ Exhibit B – Assignment of Lessor's Interest under Lease (if applicable)
336 ☒ Exhibit C – Bill of Sale (if applicable)
337 ☐ Exhibit D – Lead Paint Disclosure Addendum (if applicable)
338 ☐ Exhibit E – AS IS Exceptions (if applicable)
339
340
341    24. Time for Acceptance.  If Seller does not return to Buyer a signed and dated version of this Agreement
342 on or before 4:00 PM Pacific Time on **Friday, July 19th, 2013**, then the Earnest Money shall be promptly refunded to
343 Buyer and thereafter, neither party shall have any further right or obligation hereunder.
344
345    25. OFAC Certification.  The Federal Government, Executive Order 13224, requires that business persons
346 of the United States not do business with any individual or entity on a list of "Specially Designated nationals and
347 Blocked Persons" - that is, individuals and entities identified as terrorists or other types of criminals.  Buyer hereinafter
348 certifies that:
349
350    25.1  It is not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by
351 any Executive Order or the United States Treasury Department as a terrorist, specially designated national and/or
352 blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or
353 administered by the Office of Foreign Assets Control; and
354
355    25.2  It has not executed this Agreement, directly or indirectly on behalf of, or instigating or facilitating this
356 Agreement, directly or indirectly on behalf of, any such person, group, entity, or nation.
357
358 Buyer hereby agrees to defend, indemnify, and hold harmless Seller from and against any and all claims, damages,
359 losses, risks, liabilities, and expenses (including attorney's fees and costs) arising from or related to any breach of the
360 foregoing certification.  This certification by Buyer and agreement to indemnify, hold harmless, and defend Seller shall
361 survive Closing or any termination of this Agreement.
362
363          **Buyer Signature** _____ Date: **07/15/2013**
364
365 CONSULT YOUR ATTORNEY.  THIS DOCUMENT HAS BEEN PREPARED FOR SUBMISSION TO YOUR
366 ATTORNEY FOR REVIEW AND APPROVAL PRIOR TO SIGNING.  NO REPRESENTATION OR
367 RECOMMENDATION IS MADE BY THE COMMERCIAL ASSOCIATION OF REALTORS® OREGON/SW
368 WASHINGTON OR BY THE REAL ESTATE AGENTS INVOLVED WITH THIS DOCUMENT AS TO THE LEGAL
369 SUFFICIENCY OR TAX CONSEQUENCES OF THIS DOCUMENT.
370
371 THIS FORM SHOULD NOT BE MODIFIED WITHOUT SHOWING SUCH MODIFICATIONS BY REDLINING,
372 INSERTION MARKS, OR ADDENDA.
373
374 Buyer _____    NEIL J GILLIES
375 By _____
376 Title  VICE PRESIDENT LIGMAN LIGHTING USA
377 Date  07/15/2013
378
379 Seller Acceptance.  By execution of this Agreement, Seller agrees to sell the Property on the terms and conditions in
380 this Agreement.
381

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 9 of 19

382   Seller     \_\_\_\_

383   By        \_\_\_\_

384   Title      \_\_\_\_

385   Date     \_\_\_\_

386

387

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 10 of 19

CRITICAL DATE LIST:

The last party to execute this Agreement shall complete the information below (the "Critical Date List"), initial where indicated, and return a copy of the same to the other party for such party's review. This Critical Date List is for reference purposes only and, in the event of a conflict between this Critical Date List and the Agreement, the terms of the Agreement shall prevail.

| | DATE: |
|---|---|
| • Execution Date (Introductory paragraph): | the later of the two dates shown beneath the parties' signatures on the signature page |
| • Earnest Money (in the form of a Promissory Note) due date (Section 1.2.1(b)): | Within Three (3) Days Of Execution |
| • Seller shall open Escrow with the Escrow Holder (Section 1.2.1(c)): | Within Two (2) Days Of Execution |
| • Seller shall deliver Seller's documents to Buyer (Section 4): | Within 5 days after the Execution Date |
| • Seller shall deliver Preliminary Report to Buyer (Section 5): | Within 5 days after the Execution Date |
| • Buyer's title objection notice due to Seller (Section 5): | Within 5 days after receipt of the Preliminary Report |
| • Seller's title response due to Buyer (Section 5): | Within 5 days after receipt of Buyer's title objection notice |
| • Title Contingency Date (Section 5): | Within 5 days after receipt of Seller's title response |
| • Expiration date for satisfaction of General Conditions (Section 2.1): | Within 60 days of the Execution Date |
| • Expiration date for satisfaction of Financing Condition (Section 2.1): | Within 60 days of the Execution Date |
| • By this date, Buyer must deliver the notice to proceed contemplated in Section 2.2. | Within 60 days of the Execution Date |
| • Closing Date (Section 7.1): | On or Before 10 Days After Buyer's Waiver Of All Contingencies |

Initials of Buyer: _NG_    Initials of Seller: _____
Initials of Buyer: _____    Initials of Seller: _____

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 11 of 19

# EXHIBIT A
## LEGAL DESCRIPTION OF PROPERTY

<u>To be inserted at Closing by Title Company.</u>

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 12 of 19

EXHIBIT B

RECORDING REQUESTED BY _____ AND _____
WHEN RECORDED MAIL TO:
Company:        _____
Address:        _____
City, State, Zip    _____

## ASSIGNMENT OF LEASES

THIS ASSIGNMENT OF LEASES (this "Assignment") is made and entered into as of this _____ day of _____, _____, by and between_____, a _____ ("Assignor"), and _____, a _____ ("Assignee").

## RECITALS

This Assignment is entered into on the basis of and with respect to the following facts, agreements and understandings:

A.    On _____, _____, Assignor, as "Lessor," and _____, _____ as "Lessee," entered into a certain Lease, pursuant to which said Lessor leased to said Lessee certain real property in the City of _____, County of _____, State of _____ (the "Premises"), which Premises are a portion of the property more particularly described on Exhibit A, attached hereto and made part hereof by this reference (the "Property"). Said Lease is hereinafter referred to as the "Lease."

B.    By an instrument dated of even date herewith and recorded prior to this instrument, Assignor sold and conveyed its fee interest in and to the Property to Assignee and, in conjunction therewith, Assignor agreed to assign its interest as Lessor under the Lease to Assignee and Assignee agreed to assume the obligations of the Lessor under the Lease, all as more particularly set forth in this Assignment.

NOW, THEREFORE, for good and valuable consideration, including the mutual covenants and agreements set forth herein, Assignor and Assignee agree as follows:

1.    Assignment. Assignor hereby sells, assigns, grants, transfers and sets over to Assignee, its heirs, personal representatives, successors and assigns, all of Assignor's right, title and interest as Lessor under the Lease.

2.    Acceptance of Assignment and Assumption of Obligations.    Assignee hereby accepts the assignment of the Lessor's interest under the Lease and, for the benefit of Assignor, assumes and agrees faithfully to perform all of the obligations which are required to be performed by the Lessor under the Lease on or after the Effective Date (defined below).

3.    Effective Date. The effective date of this Assignment and each and every provision hereof is and shall be _____ (the "Effective Date"). (If no dated is identified, the Effective Date shall be the date the deed from Assignor to Assignee is recorded.)

4.    Assignor's Indemnity of Assignee. Assignor hereby agrees to defend (with counsel reasonably satisfactory to Assignee) and indemnify Assignee, its heirs, personal representatives, successors and assigns, and each of them, from and against any and all claims, suits, demands, causes of action, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees) arising out of or resulting from any act or omission

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 13 of 19

Case 13-33940-elp11    Doc 40    Filed 08/13/13

47  committed or alleged to have been committed by Assignor as Lessor under the Lease, including without limitation any
48  breach or default committed or alleged to have been committed by the Lessor under the Lease, prior to the Effective
49  Date.
50
51      5.    Assignee's Indemnity of Assignor.   Assignee, for itself and on behalf of its heirs, personal
52  representatives, successors and assigns, hereby agrees to defend (with counsel reasonably satisfactory to Assignor)
53  and indemnify Assignor, its partners, and their respective directors, officers, employees, agents, representatives,
54  successors and assigns, and each of them, from and against any and all claims, suits, demands, causes of action,
55  actions, liabilities, losses, damages, costs and expenses (including attorneys' fees) arising out of or resulting from any
56  act or omission committed or alleged to have been committed by Assignee, its heirs, personal representatives,
57  successors and assigns, as Lessor under the Lease, including without limitation any breach or default committed or
58  alleged to have been committed by the Lessor under the Lease, on or after the Effective Date.
59
60      6.    Successors and Assigns.  This Assignment, and each and every provision hereof, shall bind and
61  inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.
62
63      7.    Governing Law.  This Assignment shall be construed and interpreted and the rights and obligations
64  of the parties hereto determined in accordance with the laws of the state where the Property is located.
65
66      8.    Headings and Captions.  The headings and captions of the paragraphs of this Assignment are for
67  convenience and reference only and in no way define, describe or limit the scope or intent of this Assignment or any
68  of the provisions hereof.
69
70      9.    Gender and Number.  As used in this Assignment, the neuter shall include the feminine and
71  masculine, the singular shall include the plural and the plural shall include the singular, as the context may require.
72
73      10.   Multiple Counterparts.  This Assignment may be executed in counterparts, each of which shall be
74  deemed an original, but all of which together shall constitute one and the same instrument.
75
76      11.   Attorneys' Fees.   In the event a suit, action, arbitration, or other proceeding of any nature
77  whatsoever, including without limitation any proceeding under the U.S. Bankruptcy Code, is instituted, or the services
78  of an attorney are retained, to interpret or enforce any provision of this Assignment or with respect to any dispute
79  relating to this Assignment, the prevailing or non-defaulting party shall be entitled to recover from the losing or
80  defaulting party its attorneys', paralegals', accountants', and other experts' fees and all other fees, costs, and
81  expenses actually incurred in connection therewith (the "Fees").  In the event of suit, action, arbitration, or other
82  proceeding, the amount of Fees shall be determined by the judge or arbitrator, shall include all costs and expenses
83  incurred on any appeal or review, and shall be in addition to all other amounts provided by law.
84
85      IN WITNESS WHEREOF, the parties hereto have executed this Assignment on the respective dates set
86  opposite their signatures below, but this Assignment on behalf of such party shall be deemed to have been dated as
87  of the date first above written.
88
89  ASSIGNOR: _____
90
91  ASSIGNEE: _____
92
93                              *[Acknowledgement page follows.]*
94

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 14 of 19

Acknowledgment for Assignor

STATE OF_____ )
                              ) ss.
County of _____ )

    This instrument was acknowledged before me this _____ day of _____, 2_____, by
_____as _____ of _____ a(n) _____, on behalf of
the _____.

_____
Notary Public for Oregon
Printed Name:_____
My Commission Expires:_____


Acknowledgment for Assignee

STATE OF_____ )
                              ) ss.
County of _____ )

    This instrument was acknowledged before me this _____ day of _____, 2_____, by
_____as _____ of _____ a(n) _____, on behalf of
the _____.

_____
Notary Public for Oregon
Printed Name:_____
My Commission Expires:_____

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 15 of 19

EXHIBIT C
BILL OF SALE

_____ a _____ ("Seller"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby bargain, transfer, convey and deliver to _____, a _____ ("Buyer"), its successors and/or assigns:

All of the personal property owned by Seller (collectively, "Personal Property") located in or on the real property located at _____ in the City of _____, County of _____, State of _____, which Personal Property is more particularly described on Schedule 1 attached hereto and incorporated herein by reference.

Seller hereby covenants with Buyer that said Personal Property is free and clear of and from all encumbrances, security interests, liens, mortgages and claims whatsoever and that Seller is the owner of and has the right to sell same. Seller, on behalf of itself and its successors, does hereby warrant and agree to defend the title in and to said Personal Property unto Buyer, its successors or assigns against the lawful claims and demands of all persons claiming by or through Seller.

IT IS UNDERSTOOD AND AGREED THAT BUYER HAS EXAMINED THE PERSONAL PROPERTY HEREIN SOLD AND THAT THIS SALE IS MADE "AS IS, WHERE IS" AND SELLER DISCLAIMS ANY EXPRESS OR IMPLIED WARRANTY OTHER THAN THE WARRANTY OF TITLE SET FORTH ABOVE, AS TO THE PERSONAL PROPERTY INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Buyer and Seller agree that this Bill of Sale shall be effective upon the delivery thereof by Seller to Buyer.

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be executed this _____ day of _____, _____.

SELLER:

_____

BUYER:

_____

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 16 of 19

Case 13-33940-elp11    Doc 40    Filed 08/13/13

LEAD-BASED PAINT DISCLOSURE ADDENDUM
(TO BE COMPLETED IF THE PROPERTY CONSISTS OF RESIDENTIAL HOUSING BUILT PRIOR TO 1978)

Seller and Buyer are parties to that certain Commercial Association of Realtors® Oregon / SW Washington Purchase and Sale Agreement and Receipt for Earnest Money (Oregon Commercial Form) dated _____ _____, 20_____ (the "Purchase Agreement") for the sale of the Property described therein. Capitalized terms used in this addendum without definition shall have the meanings given them in the Purchase Agreement. Except as expressly modified by this addendum and any other addendum to the Purchase Agreement executed by Buyer and Seller, the Purchase Agreement is unmodified. This addendum and the Purchase Agreement may not be modified except in a writing signed by both Seller and Buyer.

<u>LEAD WARNING STATEMENT</u>

EVERY PURCHASER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY ON WHICH A RESIDENTIAL DWELLING WAS BUILT PRIOR TO 1978 IS NOTIFIED THAT SUCH PROPERTY MAY PRESENT EXPOSURE TO LEAD FROM LEAD-BASED PAINT THAT MAY PLACE YOUNG CHILDREN AT RISK OF DEVELOPING LEAD POISONING. LEAD POISONING IN YOUNG CHILDREN MAY PRODUCE PERMANENT NEUROLOGICAL DAMAGE, INCLUDING LEARNING DISABILITIES, REDUCED INTELLIGENCE QUOTIENT, BEHAVIORAL PROBLEMS AND IMPAIRED MEMORY. LEAD POISONING ALSO POSES A PARTICULAR RISK TO PREGNANT WOMEN. THE SELLER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY IS REQUIRED TO PROVIDE THE BUYER WITH ANY INFORMATION ON LEAD-BASED PAINT HAZARDS FROM RISK ASSESSMENTS OR INSPECTIONS IN THE SELLER'S POSSESSION AND NOTIFY THE BUYER OF ANY KNOWN LEAD-BASED PAINT HAZARDS. A RISK ASSESSMENT OR INSPECTION FOR POSSIBLE LEAD-BASED PAINT HAZARDS IS RECOMMENDED PRIOR TO PURCHASE.

AGENT'S ACKNOWLEDGMENT

Seller Agent has informed Seller of Seller's obligations under 42 U.S.C. 4852(d) and Agent is aware of his/her responsibility to ensure compliance.

<u>SELLER'S DISCLOSURE</u>

    .1    **Presence of lead-based paint and/or lead-based paint hazards (check one below):**

☐ Seller has knowledge of lead-based paint and/or lead-based paint hazards in the housing (explain).

_____

_____

☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

    .2    **Records and reports available to Seller (check one below):**

☐ Seller has provided Buyer with all available records and reports relating to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

_____

_____

☐ Seller has no reports or records relating to lead-based paint and/or lead-based paint hazards in the housing.

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 17 of 19

48  The following parties have reviewed the information above and certify, to the best of their knowledge, that the
49  information they provided is true and accurate. A photocopy of this completed LEAD-BASED PAINT DISCLOSURE
50  ADDENDUM, together with a copy of any documents listed in Section 2 of Seller's Disclosure above, may be treated
51  as an original.

Seller Agent_____ Date_____ ⬅    Seller_____ Date_____ ⬅

Selling Firm_____    Seller_____ Date_____ ⬅

52
53      BEFORE BUYER IS OBLIGATED TO PURCHASE THIS PROPERTY UNDER ANY PURCHASE AND SALE
54          AGREEMENT, BUYER'S AND SELLER'S SIGNATURES ARE REQUIRED ON THE FORM BELOW.
55
56  BUYER'S ACKNOWLEDGMENT
57      .1      **Buyer has received copies of all information listed above in Section 2 of Seller's Disclosure of**
58  **this form.**
59
60      .2      **Buyer has received the pamphlet "Protect Your Family from Lead in Your Home."**
61
62      .3      **Buyer has (check one below):**
63      ☐ Elected a ten (10) day opportunity (or mutually agreed upon period) to conduct a ☐ risk assessment or ☐
64  inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards, providing Buyer the
65  right to rescind the Purchase Agreement by written notice to Seller no later than the end of such agreed upon 10 day
66  period if Buyer is not satisfied in Buyer's sole discretion with the results of such risk assessments or inspection, as
67  applicable. Buyer and Seller hereby agree the ten (10) day period described in the preceding sentence shall begin
68  _____ and end _____.  Buyer's failure to provide written notice of Buyer's election to rescind the Purchase
69  Agreement to Seller on or before _____ _____, 20_____ shall be deemed a waiver of Buyer's right to rescind as
70  provided in this addendum. If Buyer timely elects to rescind the Purchase Agreement as provided herein, the Earnest
71  Money shall be returned to Buyer, together with any interest thereon.
72      ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or
73  lead-based paint hazards.

Buyer_____    Date_____ ⬅

Buyer_____    Date_____ ⬅

74
75                          CERTIFICATION OF ACCURACY
76
77      This section must be signed by Buyer before Seller signs lines below. The following parties have reviewed
78  the information and certify, to the best of their knowledge, that the information they provided herein is true and
79  accurate.

Buyer_____ Date_____ ⬅    Seller_____ Date_____ ⬅

Buyer_____ Date_____ ⬅    Seller_____ Date_____ ⬅

Buyer Agent_____ Date_____ ⬅    Seller Agent_____ Date_____ ⬅

Buying Firm_____    Seller Firm_____

80

┌─────────────────────────────────────────────────────┐
│       LINES WITH THIS SYMBOL ⬅ REQUIRE A SIGNATURE    │
└─────────────────────────────────────────────────────┘

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 18 of 19

```
1                                EXHIBIT E
2                             AS IS EXCEPTIONS
3
4
5              ☐  None
6              ☐  _____
7              ☐  _____
8              ☐  _____
```

© 1997 Commercial Association of REALTORS® OREGON/SW WASHINGTON (Rev. 02/11)
PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY (OREGON)
ALL RIGHTS RESERVED
Page 19 of 19

# ADDENDUM TO REAL ESTATE SALE AGREEMENT

This is an Addendum to:  __XX__ Real Estate Agreement  __XX__ Sellers Counter Offer ___ Buyers Counter Offer

RE:     Real Estate Sale Agreement No. ____ Dated:  __July 15, 2013__     Addendum No__   1   __

Buyer:     **Ligman USA Properties, LLC**

Seller:     **AMG Factory, LLC**

The real property described as:  **7144 NW Progress Ct., Hillsboro, OR.**

---

**Seller and Buyer hereby agree the following shall be a part of the Real Estate Sale Agreement referenced above:**

**The terms and conditions of the Purchase and Sale Agreement dated July 15, 2013 are hereby accepted subject to the following modifications:**

1.2     **Purchase Price:**   The Purchase Price shall be $2,200,000., cash at closing.

1.2.1     **Earnest Money Deposit:**   Earnest Money Promissory Note shall be converted to cash and deposited to escrow within 7 days of a mutually acceptable Purchase and Sale Agreement.

2.1     **Conditions to Purchase:**    All conditions to purchase, (General Conditions, Financing, and Environmental Assessment) shall be completed within 45 days of a mutually executed Purchase and Sale Agreement.   Buyer agrees to provide Seller with a contact at Bank of America who can confirm Buyer's timely application for financing of the subject acquisition.

9.     **Possession:**    Seller shall deliver possession of the subject property 30 days following closing.

26.     **Seller Contingency:**    Seller, AMG Factory, LLC is currently in bankruptcy. Closing of the subject transaction may need the approval of the bankruptcy court.   If the terms and conditions of this offer and counter offer need the approval of the bankruptcy court or other jurisdiction, then closing is subject to said approval.

This counter offer shall become null and void if not mutually executed by both parties prior to 5:00pm on Monday, July 22, 2013.

**AGREED AND ACCEPTED**

**Buyer signature:** _____   **Date:** _____

**Seller signature:** _____   **Date:** 7/18/2013

Listing Licensee: <u>Robert Niehaus</u>          Selling Licensee: <u>Kevin Joshi</u>

Addendum pages ___2___

Dated <u>July 19, 2013</u>

To: <u>**AMG Factory, LLC, Seller**</u>

Under date of July 18, 2013, you counter offered the original Offer dated July 15, 2013 received from **Ligman USA Properties, LLC, as Purchaser**, for the property described as **7144 NW Progress Court, Hillsboro, OR 97124** with a price of Two Million Two Hundred Thousand and no/100 dollars ($2,200,000), among other conditions, reference to which hereby is made.

Having considered the said counter offer, but not being entirely satisfied therewith, the undersigned Purchaser hereby agrees to the following modifications to its original Purchase and Sale Agreement ("Offer"):

### Section 1.2 – Purchase Price

The purchase price shall be Two Million Two Hundred Thousand and no/100 dollars ($2,200,000), cash at closing.

### Section 1.2.1 - Earnest Money Deposit

Earnest Money Promissory Note shall be converted to cash and deposited to escrow within 7 days of a mutually acceptable Purchase and Sale Agreement.

### Section 2.1 – Conditions To Purchase

All conditions to purchase, (General Conditions, Financing, and Environmental) shall be completed within 60 days of a mutually executed Purchase and Sale Agreement, so long as Seller removes the Seller's Contingency (noted below as Section 26) within 15 days of the mutually executed Purchase and Sale Agreement.

Should the Seller require more than 15 days following mutual execution of the Purchase and Sale Agreement to remove its contingency noted in Section 26, then Buyer shall have up to 45 days beyond the Seller's Contingency removal date to waive its conditions to purchase.

Buyer agrees to provide Seller with a contact at Bank of America who can confirm Buyer's timely application for financing of the subject acquisition.

### Section 9 – Possession:

Seller shall deliver possession of the subject property 30 days following Closing, provided it either (i) pays rent of $12,000NNN for the 30 day stay, or (ii) executes a mutually agreeable Sublease of Seller's current location, in which case the Buyer would then waive any charge of rent for the 30 day stay.

### Section 26 – Seller Contingency:

It is understood by both parties to this transaction the Seller, AMG Factory, LLC, is currently in bankruptcy, and that closing of the subject transaction may need the approval of the bankruptcy court. If the terms and conditions of this transaction need the approval of the bankruptcy court or other jurisdiction, then closing is subject to said approval.

Any part of Purchaser's original written offer dated July 15, 2013, or the Seller's Counter-offer not hereinabove changed, altered or modified hereby is approved and accepted by both parties. Time is of the essence of this Counter-offer and unless the Seller accepts the same, in writing by 5:00 p.m. on Tuesday, July 23rd, 2013, this Counter-offer conclusively shall be deemed withdrawn and of no force and effect.

_____ NJ GILLIES JULY 19 2013 Purchaser

## SELLER'S ACCEPTANCE OF PURCHASER'S COUNTER-OFFER

Dated 7/22/2013

     I acknowledge receipt of Purchaser's above Counter-offer, hereby accept the same and agree to sell said property for the price and on the terms and conditions set forth in the original offer mentioned above as altered and modified by the seller's above counter-offer.

_____ Seller      _____ Seller