**Nicholas J. Henderson, OSB#074027**
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. 13-33940-elp11 |
| AMG FACTORY, LLC, | DEBTOR'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT; |
| Debtor. | MOTION TO DISMISS CHAPTER 11 CASE |

AMG Factory, LLC (the "Debtor"), respectfully requests the Court for entry of an order,

approving the proposed settlement agreement dated September 30, 2013 (the "Settlement

Agreement"), by and between Debtor and creditor Key Government Finance, Inc. ("Key"). The

Debtor further requests the Court enter an order dismissing the above-captioned case, and also

request the Court to shorten the notice period for approval of the settlement agreement and the

dismissal of the case. The Debtor makes these motions pursuant to Sections 105 and 1112 of

Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9019 of the Federal

**Motschenbacher & Blattner, LLP**
**117 SW Taylor St., Suite 200**
**Portland, OR 97204**
**Phone: (503) 417-0500**
**Fax: (503) 417-0501**

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2002-1(b). In support of these motions, Debtor represents as follows:

1.      On June 19, 2013 (the "Petition Date") the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code under case number 13-33940-elp11.

2.      A committee of unsecured creditors has not been appointed on this case.

3.      On August 5, 2013, the Debtor noticed a proposed sale of the real property and improvements located at 7144 NW Progress Ct., Hillsboro, OR 97124 and related use and occupancy permits (the "Property"). The Property constituted the Debtor's only asset.

4.      On September 9, 2013, the Court entered an order approving the sale pursuant to certain conditions to be met at closing.

5.      The sale of the Property closed on or about September 30, 2013. A true and correct copy of the closing statement for the sale of the Property is attached hereto as **Exhibit A**.

6.      In conjunction with the sale of the Property, the Debtor and Key entered into a settlement agreement which would, subject to Court approval: 1) resolve all disputes between Key, the Debtor and the Debtor's principals; 2) provide for the sale of the Property; 3) provide for payment of all administrative expenses; and 4) provide for payment of non-insider claims.

7.      The Settlement Agreement contains additional provisions, terms and conditions. The foregoing is merely a summary of the more important provisions and is qualified by the Settlement Agreement itself. The Settlement Agreement is attached hereto as **Exhibit B**.

8.      With the Property sold, the Debtor has no assets left to administer.

9. This Court has jurisdiction over these motions pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

**Motschenbacher & Blattner, LLP**
**117 SW Taylor St., Suite 200**
**Portland, OR 97204**
**Phone: (503) 417-0500**
**Fax: (503) 417-0501**

10.     Approval of the Settlement Agreement is in the best interests of the estate, as the Settlement Agreement would result in the complete satisfaction of the Key claim against Debtor and the insiders.

11.     Aside from the Key claim that would be resolved through the Settlement Agreement, all non-insider claims have been satisfied, with one exception. Westmark Center Owners Association has indicated that it is owed $631.00 for post-petition assessments made prior to the sale of the Property. The Debtor's principals have made arrangements to pay that claim directly.

12.     Once Westmark Center Owners Association is paid, and once the Settlement Agreement is approved, all claims against the Debtor will have been fully paid or waived. The Debtor's only remaining obligation will be to pay the U.S. Trustee's administrative fees. The Debtor's principals have made arrangements to pay all amounts owing through 4th quarter of 2013, and will be able to pay all amounts due within the next 21 days.

13.     Because there are no assets left to administer, and because all claims will have been satisfied or waived, good cause exists to dismiss the case.

14.     In accordance with Bankruptcy Rule 2002, Debtor proposes to give notice of this Motion by serving a copy of this Motion upon (i) all persons or entities required to be served pursuant to orders of this Court; (ii) the United States Trustee; and (iii) all creditors and parties listed on the current mailing matrix maintained by the Clerk of the Court.

15.     A copy of the Debtor's proposed order approving this motion is attached hereto as **Exhibit C**.

**Motschenbacher & Blattner, LLP**
**117 SW Taylor St., Suite 200**
**Portland, OR 97204**
**Phone: (503) 417-0500**
**Fax: (503) 417-0501**

16.     The Debtor has conferred with the United States Trustee, Key Government Finance, Inc., and Westmark Center Owners Association regarding this motion.  Said parties have all indicated that they do not oppose this motion.

Based on the foregoing, Debtor respectfully submits that the relief requested herein is necessary and appropriate, is in the best interests of the Estate, and should be granted in all respects.  Debtor respectfully requests that the Court enter the proposed order granting the Debtor the relief requested herein and such other and further relief as is just and proper.

Dated: November 26, 2013              /s/ Nicholas J. Henderson
                                      Nicholas J. Henderson, OSB #074027
                                      Of Attorneys for Debtor

**Motschenbacher & Blattner, LLP**
**117 SW Taylor St., Suite 200**
**Portland, OR 97204**
**Phone: (503) 417-0500**
**Fax: (503) 417-0501**

# EXHIBIT A

## TICOR TITLE COMPANY
111 SW Columbia, Suite 1000, Portland, OR 97201
Phone: (503)242-1210    Fax: (503)242-0770

## SELLER'S FINAL SETTLEMENT STATEMENT

| | |
|---|---|
| **Date:** September 30, 2013 | **Time:** 04:33·PM |
| **Settlement Date:** September 30, 2013 | **Escrow No.:** 3626061582AMS |
| **Borrower:** Ligman USA Properties, LLC | **Escrow Officer:** Alii Swallow |
| 3302 NW 211th Terrace | |
| Hillsboro, OR 97124 | |
| **Seller:** AMG Factory LLC | |
| 7144 NW Progress Court | |
| Hillsboro, OR 97124 | |
| **Property:** 7144 NW Progress Court | |
| Hillsboro, OR 97124 | |

| | DEBIT | CREDIT |
|---|---|---|
| **Financial Consideration** | | |
| Total Consideration | | 2,200,000.00 |
| **Prorations/Adjustments** | | |
| County Taxes at $16,952.16 | 4,226.43 | |
|    07/01/13    to    09/30/13 | | |
| **Commissions** | | |
| Listing Broker's Commission to Niehaus Properties, Inc. 2,200,000.00 @ 2.50% = 55,000.00 | | |
| Selling Broker's Commission to Kidder Mathews 2,200,000.00 @ 2.50% = 55,000.00 | 110,000.00 | |
| **Escrow Charges** | | |
| Settlement or Closing Fee | 900.00 | |
|    Ticor Title Company | | |
| **Title Charges** | | |
| Title Insurance | 3,900.00 | |
|    Chicago Title Insurance Company | | |
|    Owner's Standard | | |
|    Lender's Extended | | |
| Release Tracking Service Fee | 120.00 | |
|    Ticor Title Company | | |
| Government Service Fee | 25.00 | |
|    Ticor Title Company | | |
| **Recording Charges** | | |
| City/County Tax/Stamps | 1,100.00 | |
|    Ticor Title Company | | |
| Recording Fees | 100.00 | |
|    Ticor Title Company | | |
| **Payoffs** | | |
| Key Government Finance Inc. | | |
|    Total Payoff | 2,033,570.47 | |
|    Loan Payoff    2,033,570.47 | | |
| **Other Debits/Credits** | | |
| Westmark Owner's Association | 7,500.00 | |
|    Delinquent Owner's Association | | |
| Washington County Tax Assessor    R2104044 | 32,558.10 | |
|    Washington County Assessor | | |
| Office of the US Trustee    13-33940-elp11 | 6,000.00 | |
|    Trustee's Fee | | |

(3626061582AMS.PFD/3626061582AMS/65) September 30, 2013 04:33·PM

## SELLER'S FINAL SETTLEMENT STATEMENT - Continued

|  | DEBIT | CREDIT |
|---|---|---|
| **Subtotals** | 2,200,000.00 | 2,200,000.00 |
|  | 0.00 |  |
| **TOTALS** | 2,200,000.00 | 2,200,000.00 |

CERTIFIED A TRUE COPY
TICOR TITLE INSURANCE CO.
BY: _____
AUTHORIZED SIGNATURE

(3626061582AMS.PFD/3626061582AMS/66) September 30, 2013 04:33 PM

# EXHIBIT B

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**"), effective this ⅔0 day of September, 2013, regardless of the date signed, is entered into between: (1) Key Government Finance, Inc., a Colorado corporation ("**Lender**"), on the one side, and (2) AMG Factory LLC, an Oregon limited liability company ("**AMG**"), Apparel Manufacturing Group LTD, an Oregon corporation ("**Apparel**"), Devin B. Wright ("**D. Wright**"), Gary L. Hilde ("**Hilde**"), and Joseph H. Wright ("**J. Wright**," and together with Apparel, D. Wright and Hilde, the "**Guarantors**"). AMG and the Guarantors are sometimes collectively referred to herein as the "**Borrowing Parties**." All parties are sometimes individually referred to herein as a "**Party**," and collectively as the "**Parties**."

## Recitals

**A.**     On or about March 6, 2008, AMG executed and delivered a promissory note ("the **Note**") evidencing a loan from Lender to AMG in the amount of $2,400,000. Lender initially endorsed the Note to the State of Oregon Economic and Community Development Commission ("**State of Oregon**"), but the Note was endorsed back to Lender on or about January 17, 2012. Lender is the current holder of the Note and entitled to enforce it.

**B.**     To secure AMG's complete and timely performance of all obligations owing under the Note, on or about March 6, 2008, AMG executed and delivered a trust deed (the "**Trust Deed**") in favor of Lender, as beneficiary, covering real property owned by AMG, commonly known as 7144 NW Progress Ct., Hillsboro, Oregon 97124, and legally described in the Trust Deed (the "**Real Property**"). The Trust Deed was recorded in the official records of Washington County on March 6, 2008, as document number 2008-019849. Lender initially assigned the Trust Deed to the State of Oregon, but the Trust Deed was assigned back to Lender on or about January 17, 2012. Lender is the current holder of the Trust Deed and entitled to enforce it.

**C.**     To induce Lender to extend credit to AMG under the Note, on or about March 6, 2008, each of the Guarantors individually executed and delivered to Lender a personal guaranty (each a "**Guaranty**," collectively, the "**Guaranties**"), wherein each Guarantor absolutely guaranteed full and timely payment of all amounts due by AMG under the Note. Lender initially assigned the Guaranties to the State of Oregon, but the Guaranties were assigned back to Lender on or about January 17, 2012. Lender is the current holder of the Guaranties and entitled to enforce them.

**D.**     To further secure AMG's complete and timely performance of all obligations owing under the Note, on or about March 6, 2008, under the terms of the Trust Deed, AMG granted Lender a security interest in the following additional collateral and the proceeds thereof: general intangibles, accounts, instruments, inventory, chattel paper, payment intangibles, promissory notes, investment property, noncash proceeds, and deposit accounts (collectively, the "**AMG Collateral**"). On March 6, 2008, Lender perfected its security interest in the AMG Collateral by filing a UCC Financing Statement at lien number 7896804 in the official records of the Oregon Secretary of State.

**E.**     To further secure AMG's complete and timely performance of all obligations owing under the Note, on or about March 6, 2008, Apparel executed and delivered to Lender a security agreement (the "**Security Agreement**") granting Lender a lien on the following collateral and proceeds thereof: furniture, fixtures related to the Real Property, machinery, and equipment (collectively, the "**Apparel Collateral**"). On March 6, 2008, Lender perfected its security interest in the Apparel Collateral by filing a UCC Financing Statement at lien number 7896848 in the official records of the Oregon Secretary of State, and by recording the same UCC1 Financing Statement in the official records of Washington County, at document number 2008-019852. Lender initially assigned the Security Agreement to the State of Oregon, but the Security Agreement was assigned back to Lender on or about January 17, 2012. Lender is the current holder of the Security Agreement and entitled to enforce it.

**F.**     The Note, Trust Deed, Guaranties, Security Agreement, and any documents pertaining thereto, are collectively referred to herein as the "**Loan Documents**." The term Loan Documents is meant to include all loan documents or other agreements executed between the Parties related to the Note, Trust Deed, Guaranties, or Security Agreement.

**G.**     On or about November 1, 2012, Lender filed a civil action against Borrowing Parties in the Circuit Court of the State of Oregon for the County of Washington, Case No. C12-6798CV, seeking judgment on claims for breach of the Note, foreclosure of the Trust deed, breach of Guaranties, and foreclosure of security interest in personal property under the Trust Deed and Security Agreement. The civil action referenced in this paragraph will be referred to herein as the "**Litigation**."

**H.**     On or about April 15, 2013, Lender obtained a default judgment on all claims against AMG in the Litigation, including the claims for foreclosure of the Trust Deed and for breach of the Note, entitling Lender to damages in the principal amount of $2,190,497.35, plus interest as of March 4, 2013, in the amount of $132,306.64 (accruing daily at a per annum rate of 7.64% on the principal amount), plus late fees in the amount of $1,323.04, plus court costs of $9,643.51, plus attorney fees of $15,791.00. The judgment referenced in this paragraph will be referred to herein as the "**Judgment**," and the damages referenced in this paragraph will be referred to herein as the "**Judgment Amount**."

**I.**     As part of the Litigation, Lender filed a Motion for Summary Judgment against the Guarantors ("**Summary Judgment**"), seeking to obtain a money judgment against each Guarantor in the amount of the Judgment. Prior to the hearing on the Summary Judgment, the Guarantors executed a Stipulated Judgment ("**Stipulated Judgment**") whereby the Guarantors stipulated to judgment against them and in favor of Lender for the Judgment Amount. In exchange Lender agreed to hold the Stipulated Judgment for a finite period of time to allow AMG to finalize a sale of the Real Property.

**J.**     On June 19, 2013, AMG filed a petition for relief under chapter 11 of the Bankruptcy Code, under case number 13-33940-elp11 (the "**Bankruptcy Case**"), in the United States Bankruptcy Court for the District of Oregon.

**K.**     On August 13, 2013, the court in the Bankruptcy Case entered a stipulated order for relief from stay (the "**Relief Order**"), whereby Lender was granted immediate relief from the

automatic stay under 11 USC § 362 to continue with the foreclosure of the Real Property, provided that no foreclosure sale occur prior to November 1, 2013.

**L.**     AMG has reached an agreement to sell the Real Property to Ligman USA Properties LLC ("**Buyer**"), for the gross sales price of $2,200,000 ("**Gross Sale Proceeds**").

**M.**     On September 9, 2013, the court in the Bankruptcy Case entered a stipulated order (the "**Sale Order**") authorizing a sale of the Real Property, free and clear of liens (the "**Sale**"). Under the Sale Order, Lender is to receive all proceeds from the sale of the Real Property, less certain amounts set forth in the Sale Order, provided that the total amount paid to Lender shall not be less than $2,000,000.

**N.**     The total amount that will be paid to Lender from the Sale is estimated to be $2,037,000, an amount insufficient to pay the full Judgment Amount. The Borrowing Parties have requested that Lender waive any deficiency owed by the Guarantors under their respective Guaranties. Lender is willing to accommodate Borrowing Parties' request, subject to the terms and conditions below

**Agreement**

In consideration of the mutual promises set forth below, the Parties agree as follows:

**1.     Recitals.**

The Parties expressly incorporate the above Recitals and agree that they are true and accurate.

**2.     Closing Representations:**

Contemporaneous with this Agreement, a detailed settlement statement ("**Settlement Statement**") is being provided to Lender together with the accepted sale offer from Borrower. The Settlement Statement is attached hereto as Exhibit 1, has been acknowledged by Lender in writing, and is made a part hereof. Lender's consent to the sale of the Real Property is conditioned upon the representations set forth in the Settlement Statement. Under the terms of the Settlement Statement, as approved, no less than the sum of Two Million Dollars ($2,000,000) ("**Lender Sale Proceeds**") is to be paid to Lender on or at the closing of the sale of the Real Property. Lender will not release the Trust Deed in the Real Property without first receiving a final HUD-1 closing statement containing Lender's written acknowledgment and consent. Lender must approve in writing any changes to the Settlement Statement that affects in any way the Lender Sale Proceeds.

**3.     Sale of Real Property.**

Upon closing and the sale of the Real Property, all net proceeds of such sale, less any costs and other distributions set forth in the approved Settlement Statement, shall be paid to Lender, in an amount not less than the Lender Sale Proceeds.

**4. Closing Date.**

Notwithstanding anything to the contrary in this Agreement or the Sale Order, Lender's willingness to accept the Lender Sale Proceeds is contingent on AMG closing a sale of the Real Property on or before November 1, 2013. If AMG fails to close a sale of the Real Property by November 1, 2013, Lender shall be entitled to proceed forward with its foreclosure sale of the Real Property, as set forth in the Relief Order.

**5. Representations and Warranties of Borrowing Parties.**

Borrowing Parties hereby represent and warrants the following:

**5.1** The Buyer is an independent, third party, who is not related to or affiliated with Borrowing Parties in any way.

**5.2** There is no agreement, oral or written, between Borrowing Parties, or any of them, and the Buyer relating to or allowing any of the Borrowing Parties to continue to use, occupy or lease the Real Property for more than thirty (30) days after closing of the sale of the Real Property.

**5.3** The sale of the Real Property fully complies with any and all applicable provisions of Oregon and Federal law.

**Each of these representations and warranties is being relied upon by Lender to consent to the short sale and shall survive closing of the sale of the Property and receipt of any funds by Lender.**

**6. Reconveyance of Trust Deed.**

If all terms of this Agreement are fully satisfied, Lender shall execute a request for reconveyance of Trust Deed, and deliver that request to the current Trustee under the Trust Deed with instructions to reconvey the Real Property to AMG. Lender's obligations to reconvey the Trust Deed are expressly subject to the Sale Order and Borrowing Parties' complete and timely satisfaction of all terms herein. If Borrower or any of the Guarantors is in breach of this Agreement, Lender shall have no obligation to reconvey its Trust Deed or release its judgment lien.

**7. Release of Security Interests.**

If all terms of this Agreement are fully satisfied, and within a reasonable time from the closing of the sale of the Real Property, Lender shall execute UCC-3 Termination Statements terminating its security interests in the AMG Collateral and the Apparel Collateral.

**8. Release of Guarantors.**

In exchange for and in consideration of the releases granted by the Borrowing Parties under this Agreement, Lender shall release the Guarantors from all obligations still owing under the Loan Documents and the Judgment, and Lender shall execute a Full Satisfaction of Judgment

with respect to the Judgment; provided, however, that the releases set forth herein do not apply to any liablity of Guarantors to Lender arising out of or related to the presence or use of hazardous material on the Real Property by any of the Borrowing Parries. Lender's obligations to release the Guarantors and execute a Full Satisfaction of Judgment are expressly subject to the completion of a sale of the Real Property and disbursement of proceeds thereof, in full compliance with the Sale Order and this Agreement.

9.      **The Borrowing Parties' Releases.**

In exchange for and in consideration of the release granted to the Guarantors under this Agreement, and except for any material breaches of this Agreement by Lender, the Borrowing Parties, including the Guarantors, together with their members, partners, affiliates, parents, subsidiaries, officers, directors, agents, employees, representatives, related entities, and successors and assigns ("**Releasing Borrowing Parties**"), completely release and forever discharge Lender, together with its members, partners, affiliates, parent, subsidiaries, officers, directors, assigns, employees, representatives, related entities, and successors and assigns ("**Lender Released Parties**"), from any and all actions, causes of action, claims, charges, judgments, obligations, demands, grievances, damages, costs, attorney fees, expenses or liabilities of any kind or nature whatsoever, in law or in equity, which exist as to the Effective Date of this Agreement, or which may hereafter accrue on account of any circumstance, whether known or unknown, patent or latent, anticipated or unanticipated, asserted or unasserted, arising out of or in any way related to the above referenced loan documents. The Releasing Borrowing Parties acknowledge their intention that this Agreement shall be effective as a full and final accord and satisfaction in settlement of and as a bar to each and every claim heretofore referred to and released which they now have, may have, have had, or may have had against the Lender Released Parties. In connection with such waiver and relinquishment, the Releasing Borrowing Parties acknowledge that they are aware that they may later discover facts different from or in addition to the facts which they now know or believe to be true with respect to the subject matter of this Agreement. It is, nevertheless, the Releasing Borrowing Parties' intention to fully, finally, absolutely, and forever settle any and all claims, disputes, and differences which exist, may exist, or may have existed between them and the Lender Released Parties, arising out of or related in any way to the Loan Documents. In furtherance of that intention, the releases herein shall be, and remain in effect as, full and complete general releases notwithstanding the discovery of any such different or additional facts. The Borrowing Parties hereby further agree to defend, hold harmless and indemnify Lender Released Parties from any and all loss, claims, demands, causes of action, expenses and costs, including, but not limited to, attorney fees and costs, relating to or arising out of the sale of the Real Property.

10.     **Tax Consequences.**

Lender makes no representations or warranties with respect to the tax consequences of the sale of the Real Property under the terms of the Sale Order or with respect to the releases contained in this Agreement. The Borrowing Parties agree that they are responsible for payment, if any, of any and all local, state, and/or federal tax obligation related in any way to the sale of the Real Property or the releases contained in this Agreement. The Borrowing Parties agree to

indemnify and hold Lender harmless from any claims, demands, deficiencies, penalties, assessments, executions, judgments, or recoveries by any government agency against Lender for any amounts claimed due on the account of the Borrowing Parties' failure to pay any local, state, and/or federal tax obligation or damages sustained by Lender by reason of any such claims, including reasonable attorney fees. Lender further reserves the right, in its sole and absolute discretion, to report the Sale or any other aspect of this Agreement to any local, state, and/or federal taxing authority.

**11.    Venue.**

Any action or proceeding arising out of this Agreement will be litigated in courts located in Washington County, Oregon. Each Party consents and submits to the jurisdiction of any local, state, or federal court located in Washington County, Oregon.

**12.    Construction of Agreement.**

This Agreement is the result of negotiations among the Parties and, accordingly, will not be construed for or against any of the Parties, regardless of which Party drafted this Agreement or any portion thereof.

**13.    Approval of Agreement by Bankruptcy Court.**  The Parties acknowledge that this Agreement, as it applies to AMG, requires bankruptcy court approval under Bankruptcy Rule 9019. AMG shall take all steps necessary to obtain approval of this Agreement.

**14.    Final Agreement.**

It is fully understood and agreed that except as otherwise provided in this Agreement, this Agreement constitutes the full agreement between the Parties regarding the subject matter hereof. All prior and contemporaneous agreements, covenants, negotiations, conversations, representations, and understandings of the Parties, oral or written, concerning the subject matter of this Agreement are hereby superseded and merged herein. Any modifications or amendments to this Agreement must be in writing and executed by all of the Parties.

**15.    Advice of Counsel.**

The Parties hereby acknowledge the following: (1) that they were provided a reasonable period of time to review and consider the Agreement; (2) that they have sought and received the advice of their attorney prior to signing this Agreement, or had the opportunity to consult with an attorney and chose not to do so; (3) that they understand that they are waiving legal rights by signing this Agreement; (4) that they have reviewed this Agreement, understand the entirety of this Agreement and the effects of signing this Agreement; and (5) that they sign this Agreement of their own free act and deed, without any coercion or duress, and that they hereby release the rights and claims set forth above in exchange for the consideration set forth in this Agreement.

**16.    Counterpart.**

This Agreement may be signed in counterparts. A fax transmission of a signature page will be considered an original signature page. At the request of a Party, the other Parties will

6 - SETTLEMENT AGREEMENT
PDX\027891\184148\CGR\12288844.5

confirm a fax-transmitted signature page by delivering an original signature page to the requesting party.

**17.    Amendments.**

This Agreement may be amended only by a written agreement signed by each of the Parties.

**18.    Attorney Fees and Litigation Expenses.**

In the event that any Party to this Agreement institutes a suit, action, arbitration, or other legal proceeding of any nature whatsoever relating to this Agreement or to the rights or obligations of the Parties with respect hereto, the prevailing party shall be entitled to recover from the losing party or parties the prevailing party's reasonable attorney fees, as well as reasonable paralegal, accountant, expert witness (whether or not called to testify at trial or other proceeding) and other professional fees and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, including but not limited to deposition transcript and court reporter costs, as determined by the judge or arbitrator, and including such fees, costs and expenses incurred in any appellate or review proceeding, or in collecting any judgment or award, or in enforcing any decree rendered with respect thereto, in addition to all other amounts provided for by law.  This provision shall apply with respect to any litigation or other proceedings in bankruptcy court, including litigation or proceedings related to issues unique to bankruptcy law.

**19.    Governing Law.**

This Agreement shall be governed and interpreted according to the laws of the State of Oregon.

**20.    Mistake of Fact.**

The undersigned hereby expressly assume the risk of any mistake of fact, including any facts proven to be other than or different from the facts now known by the undersigned or believed to exist.  It is the express intent of the undersigned to settle and adjust this controversy, finally and forever, without regard to who may or may not be correct in any understanding of any fact or applicable law relating thereto.

**21.    Authorization.**

Each Party represents and warrants that the execution, delivery and performance of this Agreement, and of any document or agreement required hereunder are within the power and authority of said party, are not in conflict with the terms of any charter, bylaw, or other organizational papers of such party or any instrument or agreement to which such party is a party. Each Party and the person signing this Agreement on behalf of such party represents and warrants that the person signing has the authority to sign this Agreement on behalf of the Party for which he or she has signed.

UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY THE BANK AFTER OCTOBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWING PARTIES' RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION, AND BE SIGNED BY THE BANK TO BE ENFORCEABLE.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed the day and year first above written.

Key Government Finance, Inc., a Colorado corporation

By: _____
Name: _____
Its: _____

AMG FACTORY LLC, an Oregon limited liability company
By: _____
Name: DEVIN B. WRIGHT
Its: MANAGING MEMBER

APPAREL MANUFACTURING GROUP LTD, an Oregon corporation
By: _____
Name: DEVIN B. WRIGHT
Its: PRESIDENT

_____
DEVIN B. WRIGHT

_____
GARY L. HILDE

_____
JOSEPH H. WRIGHT

8 - SETTLEMENT AGREEMENT
PDX\027891\184148\CGR\12288844.4

**UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY THE BANK AFTER OCTOBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWING PARTIES' RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION, AND BE SIGNED BY THE BANK TO BE ENFORCEABLE.**

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed the day and year first above written.

Key Government Finance, Inc., a Colorado corporation

By: _____
Name: Robert N. Hawley
Its:    Designated Signer

☐AMG FACTORY LLC, an Oregon limited liability company
By: _____
Name: _____
Its:   _____

APPAREL   MANUFACTURING   GROUP LTD, an Oregon corporation
By: _____
Name: _____
Its:   _____


_____
DEVIN B. WRIGHT


_____
GARY L. HILDE


_____
JOSEPH H. WRIGHT

# EXHIBIT C

In re:

AMG FACTORY, LLC,

           Debtor.

Case No. 13-33940-elp11

ORDER APPROVING SETTLEMENT
AGREEMENT AND DISMISSING CASE

       THIS MATTER having come before the Court on Debtor's Motion For Order Approving

Settlement Agreement and Motion to Dismiss (the "Motion").  The Court having reviewed the

Motion and finding that good cause exists for granting the Motion, and otherwise being fully

advised; NOW, THEREFORE, IT IS HEREBY FOUND AND DETERMINED THAT:

       A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28

U.S.C. §§ 157 (d) and 1334 and 11 U.S.C. §§ 105(a) and FRBP 9019.

       B.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Page 1 – ORDER APPROVING SETTLEMENT
      AND DISMISSING CASE

Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Case 13-33940-elp11    Doc 59    Filed 11/26/13

C.      Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and no other or further notice is required.

D.      The Motion seeks authority to enter into a Settlement Agreement dated September 30, 2013, attached to the Motion.

E.      Approval of the Settlement Agreement is in the best interests of the estate.

F.      The Motion further seeks to dismiss the case.

G.      Good cause exists for the case to be dismissed.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion for Order Approving Settlement Agreement is GRANTED;

2.      The Debtor and the parties to the Settlement Agreement are authorized to perform the terms and provisions set forth in the Settlement Agreement.

3.      The provisions of this Order regarding approval of the Settlement Agreement, and any actions taken pursuant thereto, shall survive entry dismissal of the Debtor's case.

4.      The Motion to Dismiss is GRANTED;

# # #


Order Presented By:

/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
117 SW Taylor Street, Suite 200
Portland, OR 97204
Telephone: 503-417-0500
Facsimile: 503-417-0508
E-mail: nhenderson@portlaw.com
Of Attorneys for Debtor

Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Phone: (503) 417-0500
Fax: (503) 417-0501

Parties to Serve:

<u>ECF Electronic Service:</u>

- NICHOLAS J HENDERSON    nhenderson@portlaw.com, csturgeon@portlaw.com;sdoberneck@portlaw.com;tsexton@portlaw.com;atrauman@portlaw.com
- CRAIG G RUSSILLO    crussillo@schwabe.com, dkinonen@schwabe.com;docket@schwabe.com;ecfpdx@schwabe.com;bankruptcynotices@schwabe.com
- PEENESH SHAH    pshah@schwabe.com, dgibson@schwabe.com;docket@schwabe.com;ecfpdx@schwabe.com
- US Trustee, Portland    USTPRegion18.PL.ECF@usdoj.gov

<u>Service via First Class U.S. Mail</u>:

All parties on mailing matrix

**Motschenbacher & Blattner, LLP**
**117 SW Taylor St., Suite 200**
**Portland, OR 97204**
**Phone: (503) 417-0500**
**Fax: (503) 417-0501**